MAGWIRE, Plaintiff in Error, v. HALL'S ADMINISTRATOR, Defendant in Error.

1. A. purchased certain leasehold premises with a saw-mill thereon, which were subject at the time of his purchase to a deed of trust made to secure certain promissory notes. A., at the time of his purchase, had notice of the existence of this deed and supposed it to be a valid encumbrance upon the property. In point of fact the notes and deed of trust were procured by fraud. After A.'s purchase the trustee under the deed of trust advertised the premises for sale and proceeded to sell the same, and at the sale the premises were struck off to one K. as the highest bidder. K. acted as the agent of A. and made the purchase for his benefit. Both A. and K. acted in ignorance of the fraud in procuring the notes and deed of trust. The trustee refused to execute a deed to K. and re-advertised the premises for sale under the deed of trust. K., acting for the benefit of A. and with a bond of indemnity from him, procured a temporary injunction enjoining the sale, A. becoming his surety on his injunction bond. This injunction was afterwards dissolved. In the meantime the saw-mill had burned down during the pendency of the injunction proceedings and previous to the dissolution of the injunction. The damages awarded to the defendants on the dissolution of the injunction were the full amount of the notes, with interest, &c.; which were paid by A. to the person who had originally procured by fraud the execution of the notes and deed of trust. Until after the termination of the injunction proceedings A. supposed that the deed of trust was a valid encumbrance. *Held*, that A., not being the party defrauded, was not entitled to recover back the amount so paid by him.

*Error to St. Louis Court of Common Pleas.*

Demurrer to a petition. John Magwire is plaintiff and William S. Allen, administrator of Elisha Hall, deceased, defendant. The facts as they appear in the petition are substantially as follows: Elisha Hall died in the year 1854, testate. The executors named in his will failed to qualify and the defendant Allen became administrator of his estate. On the 1st of June, 1845, one William Chambers, by lease in writing, let certain real estate in block 288 in North St. Louis to Judson Allen, Elisha Hall and Joshua J. Childs for the term of ten years. Said Hall, Allen and Childs were co-partners in the business of sawing lumber, and in the prosecution of said business they erected upon said leasehold

premises a steam saw-mill and other improvements. Afterwards and before May 15, 1846, said Elisha Hall, representing that a larger capital was needed for the more successful prosecution of their business, induced his said co-partners to join with him in the execution of two notes, dated April 1, 1846, for $1,030 each, bearing interest from date, payable to the order of Orris Hall (a brother of Elisha Hall), one in twelve months, the other in eighteen months from date, and, to secure the payment of said notes, to execute with him a deed of trust upon said leasehold premises. Said deed of trust is dated May 15th, 1846, and was made to one John R. Hammond as trustee, with power of sale in case of default of payment. After the execution of said notes and deed of trust, they were delivered to said Elisha Hall, upon his representation that upon them he could obtain the requisite means from his brother, the said Orris Hall. The only purpose for which said Allen and Childs consented to and joined in the execution of said notes and deed of trust was to raise money to increase their capital and to facilitate the business of said firm. Elisha Hall, having obtained possession of the notes and deed of trust, represented and pretended to his partners that he had procured the discount of said notes by said Orris Hall; but, in violation of his agreement, refused to pay over or apply to the use of the partnership the money so obtained, alleging and pretending that he held said money in his own hands to secure himself against loss by reason of alleged advances made by him to said co-partnership and by reason of debts due by said co-partnership to others. Said pretences and representations of said Elisha Hall were wholly false; he did not negotiate or obtain money upon said notes or either of them, but held the same in his own possession and control up to the time of his death. On the 13th of February, 1847, said Elisha Hall sold and conveyed his interest in said leasehold premises to one Primus Emerson and said Joshua J. Childs, and required them to enter into bond to him, with plaintiff Magwire as security, conditioned for the protection and indemnification of said Elisha Hall against the debts of said co-partnership ;

which debts were afterwards all fully paid and discharged. About February 18, 1848, plaintiff Magwire purchased and became entitled to said leasehold premises and all the interest of said Hall, Allen, Childs and Emerson therein. After said sale from said E. Hall to said Primus Emerson, to-wit, in May or June, 1847, he, said Hall, still holding said notes and deed of trust, pretending to be acting as the agent of said Orris Hall, but really seeking and designing to enforce the collection of said notes for his own use and benefit, and in fraud of the rights of his co-partners and of said Emerson, induced said John R. Hammond, said trustee, to advertise said leasehold premises for sale under said deed. Said Hammond accordingly did proceed to sell said premises on or about June 7, 1847, to one James Kennedy, who was the highest bidder. Kennedy purchased for plaintiff's benefit, who advanced the purchase money to him. He immediately conveyed all his right, title and interest to plaintiff Magwire. At the time of this sale and purchase neither Kennedy nor plaintiff Magwire knew the facts above stated relating to said notes and deed of trust, but supposed that said notes and deed of trust were valid and constituted a valid lien on said leasehold property. After said trustee's sale said trustee refused to execute a deed to said Kennedy, but re-advertised said property for sale. Said Kennedy, acting for plaintiff and under a bond of indemnity from him, filed his bill in chancery in the St. Louis circuit court, praying for an injunction against said Hammond and Orris Hall restraining said second sale. The court issued its temporary injunction so restraining said Hammond and Hall, their agents and servants. In order to obtain said injunction said Kennedy was obliged to and did execute a bond, with plaintiff as security, in the sum of $——, in favor of the defendants in said cause, conditioned that the said Kennedy should abide the decision of said circuit court, and pay all sums of money, damages and costs that should be adjudged against him if the injunction should be dissolved. Said injunction was dissolved. Before the dissolution thereof, and during the pendency of

said cause, said saw-mill burned down; and in consequence thereof the damages sustained by the defendants in said cause were assessed at the whole amount of said notes, interest and costs of suit. Afterwards, on or about November 11, 1854, the plaintiff Magwire, by reason of his bond of indemnity to Kennedy and his having joined in said injunction bond, was obliged to satisfy and discharge the amount of damages with interest and costs, to-wit, the sum of $3,846. Said Elisha Hall procured said notes and said deed of trust by a fraud upon his co-partners. At the time of said sale under said deed of trust, said Elisha Hall held said notes and deed of trust for his own benefit. In his hands they were null and void. Said Hall fraudulently procured said sale for his own benefit. Said Hall procured said injunction suit to be defended and procured said assessment of damages for his own benefit, and neither said Hammond nor said Orris Hall had any real interest therein. The amount of said damages was paid by plaintiff since the death of said Elisha Hall to the defendant as administrator of the estate of said Elisha. It is now in his hands as part of the assets of said estate. Plaintiff did not know until after the determination of said cause in chancery and until after the payment of said money that said notes had never been negotiated or discounted, but always supposed that they had been so discounted as aforesaid, and that said sale under the deed of trust was made to repay the advances made upon them, and that it was a valid sale. " Plaintiff therefore says that he has a demand against defendant, as for so much money had and received to plaintiff's use, in the sum of $3,846.16, and for that sum, with interest and costs, prays judgment," &c.

To this petition the defendant demurred and the court sustained the demurrer.

*W. T. Wood* and *Krum & Harding*, for defendants in error.

I. At the time Hall sold out to Emerson and Childs, the notes and deed of trust were null and void. As between Hall

and the new firm they had no validity.   Nothing in the subsequent acts of the parties interested gave them vitality or validity in law.   (See generally 1 Sto. Eq. § 188, 191–2 ; Mitchell v. Atlinger, 1 Barr, 219 ; Jackson v. Sommerville, 13 Penn. 368–9.)   No lapse of time nor any act of confirmation by the party defrauded, even with full knowledge of the facts, can restore and make vital a contract dead on account of actual fraud.   (13 Penn. 370 ; Duncan v. McCullough, 4 S. & R. 485 ; Chamberlain v. McClung, 3 W. & S. 36 ; Co. Litt. 2146.)   If the party defrauded can not affirm and give validity to a transaction void for actual fraud, who else could ? At the commencement of the injunction proceedings and the dissolution of the injunction, the notes and deed of trust were null and void.   (See 10 Penn. 185 ; Mitchell v. Kintzin, 5 Penn. 216 ; Reigal v. Wood, 1 John. Ch. 402 ; United States, 15 Pet. 594.)   The judgment in the injunction proceedings may be impeached collaterally.   The judgment was based on instruments procured by fraud and kept on foot for fraudulent purposes ; but Magwire and Kennedy knew nothing of the fraud until after the judgment and the payment of the money.   (See 13 Penn. 361 ; 9 Mo. 783 ; 11 How. 437 ; 1 Johns. Ch. 402 ; Edgell v. Sigerson, 20 Mo. 494.) If Magwire had had knowledge of the fraud and had been a party to the proceeding, he might have set up the fraud to prevent a judgment based on the notes and deed of trust. He may now recover the money coerced from him under a udgment void for fraud.

II. No demand was necessary in the case.   (Lent v. Paddleford, 10 Mass. 244 ; 22 Mo. 405.)

III. Orris Hall was not a necessary party.

IV. The petition in this case is not a count for money had and received.   It states a case in equity.

*Hill, Grover & Hill*, for defendants in error.

I. The action could not be maintained without a demand. (16 Mo. 527 ; 10 Johns. 284 ; 5 Cow. 378.)

II. The suit is against defendant as administrator, and as

such he is not liable for money had and received to plaintiff's use.   (2 Ala. 354 ; 19 Ala. 25 ; 5 Harring. 289 ; 3 id. 500.)

III. There was no privity between plaintiff and defendant, nor between plaintiff and defendant's testator.   (12 Ill. 240.)   There was no privity between plaintiff and Hall and Hammond, the defendants in the chancery suit.   There was privity however between Magwire and Kennedy.   Magwire is bound by the decree in that case.   (4 Hill, 522 ; 1 Johns. 518 ; 6 Johns. 158 ; 3 T. R. 374 ; 4 Mass. 349.)   The merits of a judgment can never be overhauled in an original suit either at law or equity.   Until the judgment is set aside or reversed it is conclusive.   (3 Johns. 157 ; 3 Day, 36 ; 3 T. R. 69 ; 12 Mass. 137, 269 ; 16 Mass. 308 ; 17 Mass. 394 ; 1 Pick. 485 ; 8 Johns. 470 ; 4 Bibb, 508 ; 2 A. K. Marsh. 353 ; 4 Verm. 616 ; 2 S. & R. 143 ; 1 John. C. 543 ; 16 Conn. 12 ; 6 Paige, 233 ; 1 Green. Ch. 108 ; 1 Bland, 486 ; 1 Blackf. 360 ; 1 Sch. & Lefr. 204 ; 1 Johns. Ch. 322.)

Scott, Judge, delivered the opinion of the court.

We can not conceive a ground in law or equity on which the plaintiff's right to a recovery in this action can be made to stand.   The petition claims that the defendant holds to the use of the plaintiff money to which he is entitled.   The cause of action, as stated, fails to set forth any facts from which this allegation can derive any support.   The plaintiff, it appears, bought a leasehold estate encumbered with a trust given to secure the payment of debts.   He admits that he was aware of the encumbrance at the time of this purchase and says he supposed the debts were genuine and really due, but afterwards discovered that they were fraudulent and pretended.   Now, admitting that the debts were fraudulent, that was no concern of the plaintiff.   He knew of their existence at the time of his purchase ; he believed them to be justly due ; he must therefore have been indemnified against them by the reduced price at which he purchased the property.   As the debts were taken in the estimate in ascertain-

ing the value of the estate, whether they were real or pretended can not affect the plaintiff. To permit him to recover would be taking so much from those who are really defrauded and giving to the. plaintiff who has no right to it. Those who conveyed the property to the plaintiffs are the only persons to take advantage of the fraud, and if they acquiesce in it nobody else has any ground for complaint.

This view of the subject disposes of the case, and we deem it unnecessary to advert to the other points made by counsel in their briefs.

The other judges concurring, the judgment is affirmed.